65 N.J. Super. 374 (1961)
167 A.2d 832
DELORES SHOWELL, ET AL., PLAINTIFFS,
v.
JOHN J. HORN, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 9, 1961.
*376 Mr. W. Louis Bossle, attorney for plaintiffs.
Mr. Michael J. Piarulli and Mr. George E. Stransky, Jr., attorneys for defendants.
SCHALICK, J.S.C.
This is an action in lieu of prerogative writs seeking to set aside the report of the Camden Charter Commission as not having been made in accordance with the mandate of the statute, and to restrain the City Clerk of the City of Camden from placing the question of the adoption or rejection of the plan recommended by the Camden Charter Commission on the ballot and from certifying an election thereon for February 21, 1961 or at any other time.
The City of Camden has been governed under the Walsh Act, R.S. 40:70-1 et seq., by a board of five commissioners.
At the general election on November 8, 1960 the electorate of Camden, by a vote of 26,488 for and 8,285 against, approved a referendum to establish a charter commission. N.J.S.A. 40:69A-2. This election was held pursuant to a procedure for adoption of optional charter plans, and it *377 resulted in the establishment of the charter commissioners who are the defendants with the city clerk. The defendant charter commission organized on November 15, 1960, and thereafter held several conferences, interviewed the city commissioners separately, visited other municipalities with varying forms of government, and held six public hearings. The charter commission employed consultants from the University of Pennsylvania and had several conferences with them. Officials other than the city commissioners were interviewed, such as the deputy comptroller and the city clerk. Also, it organized conferences with representatives of business and industry, and with leaders of civic and religious organizations. The hearings, conferences, interviews, field trips and consultations covered a period from November 15, 1960 to December 22, 1960, when the final report was filed pursuant to N.J.S.A. 40:69A-10.
The plaintiffs, taxpayers of the City of Camden, attack the findings and the report of the charter commission on the following grounds: (1) The charter commission proceeded in "undue haste" and in derogation of the statute in filing its report on December 22, 1960. Further, it is charged that said filing was solely for political expediency, by reason of the desire of the commission to make and file its report on or before December 23, 1960, in order to be able to submit the question on their report to the electorate at a special election to be held on February 21, 1961, so that under the General Election Law, if the report be so adopted by the electorate, candidates could be elected at an election to be held on May 9, 1961. (2) The report was made contrary to the mandate of the statute requiring the charter commission to "provide for the widest possible public information and discussion respecting the purposes and progress of its work." (3) The notices of the public meetings were inadequate. (4) The findings were not legally supported in the report. (5) The report of the commission failed to show any determination as to whether or not the government of the municipality "could become economical or efficient under *378 a changed form of government." (6) Some of the findings were inconsistent with the facts.
The plaintiffs contend that the inadequacy of the report itself, supported by the evidence of witnesses as to the invalidity of some of the findings, the limited notice of the public meetings, the sparseness of attendance at those meetings, the motivation of the charter commission to shorten the study so that it could meet a time schedule to make possible the elections in 1961 as noted, and the failure of the commission to include in its study certain requirements of the statute, warrant the court in setting aside this report and restraining the city clerk from submitting the question of the adoption or rejection of the plan on the ballot and from certifying an election thereon for February 21, 1961, and thus remanding the entire problem to the charter commission to carry out its statutory duties.
The defendants allege that the commission acted in full compliance with the statutory requirements, and further time was not needed for study of the different forms of government, comparison with other available forms under state law, or to make those determinations which the statute requires for the commission to come to its conclusion that the present commission form of government has not provided the citizens of Camden with the efficient or responsive government that is needed. Further, there was sufficient time for the commission to review the several forms of government provided by statute, which resulted in the charter commission's recommending the mayor-council plan B, Article 4, N.J.S.A. 40:69A-49 et seq.
The defendants offered testimony as to the holding of meetings, notices of said meetings in the newspapers and by radio announcements, and also showed the extent of the coverage of the results of the meetings and conferences through the newspapers and radio. The defendants sought to establish by testimony the validity of their findings, which were disputed by the plaintiffs, as consistent with the report.
The report of the charter commission includes a summary *379 of findings and recommendations, the history of the Camden Charter Commission, an evaluation of the commission form of government in Camden, an outline of the alternative plans available under the optional law, and a recommendation of the form of government which the charter commission proposes for Camden. The reasons for that recommendation are delineated, together with the outline of the structure of the proposed government and its advantages. Attached to the report is an appendix which includes a copy of the statute providing for the mayor-council plan B, and a schedule of the meetings of the charter commission from its organization on November 15, 1960 to December 22, 1960. The report, exclusive of the summary and the appendix, covers 29 typewritten pages.
Apart from the provisions for the election of the charter commission and the subsequent action to be taken after the filing of the report of the commission, the relevant statutory provisions as to the duties of the charter commission are defined in N.J.S.A. 40:69A-7, 9, and 10:
"40:69A-7. It shall be the function and duty of the charter commission to study the form of government of the municipality, to compare it with other available forms under the laws of this State, to determine whether or not in its judgment the government of the municipality could be strengthened, made more clearly responsive or accountable to the people or whether its operation could be more economical or efficient, under a changed form of government."
"40:69A-9. The charter commission shall hold public hearings, may hold private hearings and sponsor public forums and generally shall provide for the widest possible public information and discussion respecting the purposes and progress of its work."
"49:69A-10. The charter commission shall report its findings and recommendations to the citizens of the municipality in accordance with section 1-7 within 9 calendar months from the date of its election. For this purpose it shall file with the municipal clerk an original signed copy of any final report containing said findings and recommendations made by any member of the commission. It shall also deliver to the municipal clerk sufficient copies of any such report to permit distribution to any interested citizen. The municipal clerk shall deliver a copy of any such report to each member of the governing body. If the charter commission, or any member or *380 members thereof shall recommend the adoption of any of the optional plans of government as authorized in section 1-12(a) or 1-13, such report shall contain the complete plan as recommended."
A review of the statutes indicates that the charter commission, under N.J.S.A. 40:69A-5, is required to organize and hold its first meeting not later than 15 days after its election, and it is to report its findings and recommendations within nine calendar months from the date of its election as provided in N.J.S.A. 40:69A-10. The issue is made that sufficient time was not taken by the commission to make the study as to the present form of government, or to recommend a change to be submitted to the electorate. It may be reasonably inferred that the commission was motivated by the desire to hasten its action in order to meet its desired time schedule for subsequent elections.
The members of the commission were, and it is expected that they would be, partisan in their approach to their duties. Partisans are expected to fill various offices which form a part of our government. Such partisanship does not necessarily carry with it the objectionable features which their opponents seek to find. If such persons, however partisan, carry out the duties imposed upon them in accordance with the mandates of the law, with the resulting judgments encompassed within the obligations of their offices, we should be concerned with nothing more. It may well be, in this case, that meetings, discussions and consultations over a longer period of time might have added to the record, given a more extensive opportunity for public participation, and a wider dissemination of the problems involved, but with no change in result.
The court cannot substitute its judgment for that of the charter commission. This action is a review of the compliance with the statute by the charter commission. The Legislature has seen fit to make it possible for the electorate to choose these defendants who shall organize and constitute themselves as a charter commission. It has defined their duties which include a study by the charter commission of *381 the present form of government, to recommend, after a study of the alternate plans of government, such plan as it deems most beneficial. The method and plan to make this study must be flexible, and the Legislature has generalized in the methods to be employed for the information and the resulting protection of the electorate. The formula to be used is not an exact one, but certain prerequisites of good government are set forth in the statute as guides and standards which the charter commission should consider in order that their determinations may be sound.
The court finds that there were sufficient public hearings and, although not widely attended, sufficient notice was given and adequate opportunity afforded for all to attend. The newspaper, the Courier-Post, with the only daily circulation published in the City of Camden and which extensively covers the city, gave front page notice of the public meetings, providing the public in the beginning with full information as to the purpose of the commission and the objects which it was to attain. Also, it published on the front page the schedule of all meetings to be held, and in detail published the contentions of the spokesmen both for and against the proposals at such hearings. Other newspapers, the Inquirer and the Evening Bulletin, published in Philadelphia with wide circulation in Camden, by their coverage were responsive to the importance of the issues. This was supplemented by daily reports on the Camden radio stations, along with radio interviews by the representatives of those stations with counsel and the chairman of the charter commission which were broadcast at times when it would reach the greatest number of the listening public. The court finds that the commission provided, by these means and others, the widest possible public information and discussion respecting the purposes and progress of its work during the time it allotted and prior to its filing of the report.
An analysis must be made of the functions and duties of the charter commission in reference to its study required by statute. There is little dispute that the commission gave *382 considerable consideration to the present form of government, and no fault is found with its comparison with other available forms under the laws of this State. No issue is made with the finding that the alternative recommended plan would be more clearly responsive or accountable to the people than the present commission form of government. It was extensively argued by the plaintiffs that the charter commission failed to adequately consider and determine whether the operation under the recommended plan would be more economical or efficient, and result in a strengthening of the government of the municipality.
The plaintiffs assert that the charter commission is bound to study and analyze the present form of government in relation to the recommended form from the standpoint of the economical or efficient operation of each, so that not only would such study assist the members of the commission in the formulation of their judgment, but that its findings on that basis would provide information to the public which would aid in the future determinations of the electorate. The statute provides that the charter commission shall "determine whether or not, in its judgment the government of the municipality could be strengthened, made more clearly responsive or accountable to the people or whether its operation could be more economical or efficient, under a changed form of government." N.J.S.A. 40:69A-7. These alternative guideposts have no separate positive evaluations which shall be the determinants in the formulation of conclusions. Not one of them is to be overlooked, but the language of the statute, expressive of the intent of the Legislature, must be given a reasonable interpretation.
Ordinarily, in absence of a contrary legislative intent the use of the word "or" is considered disjunctive and not conjunctive.
"There has been, however, laxity in the use of the word `or' and the conjunction `and,' so that the words are interchangeable and that one may be substituted for the other, if to do so is consistent with the legislative intent." Murphy v. Zink, 136 N.J.L. 235 (Sup. Ct. 1947).
*383 As is often stated, the Legislature could have substituted the word "and" in the place of "or" in a statute if the conjunctive meaning was desired. It is absurd to believe that the Legislature intended that each use of the word "or" should mean "and" in the cited portion of this statute, N.J.S.A. 40:69A-7, particularly when the prefatory word is "whether."
"In a legal sense, `whether' is defined as meaning which of two or several; which of two alternatives expressed by a sentence or the clause of a sentence, and followed by `or.' * * * the word `whether,' neither in common parlance nor in legal phraseology, has ever had the force of a videlicet." Board of Supervisors, Warren County v. Vicksburg Hospital, 173 Miss. 805, 163 So. 382, 386 (Sup. Ct. 1935), 94 C.J.S. 611.
"Webster's New International Dictionary (2d Ed.) defines `or' as a coordinating particle that marks an alternative.' It can only be construed as used in the sense of `and' when the legislative intent to do so is clear and unmistakeable." Gunzer v. Town of New Fairfield, 19 Conn. Sup. 231, 111 A.2d 30, 32 (Super. Ct. 1955).
It is true, in the instant case, the charter commission may have given more weight to one or more of the alternatives than to another, but the Legislature intended that each of the alternatives should be given such weight as the commission decided was necessary in reaching its decision, whether or not in its judgment the government of the municipality could be strengthened under a changed form of government. A careful reading of the report causes this court to find that, within the scope of its studies, the charter commission dealt with each of these subjects, some more extensively than others. The findings and conclusions of the report undeniably treated with each phase of the study suggested by statute. Even though the findings may have been abbreviated on the question of whether the operation under a changed form of government would be more economical, the conclusions are sufficient under the circumstances and "are inherent in and may be properly deduced from the findings actually expressed." Tullo v. Millburn Township, 54 N.J. Super. 483, 499 (App. Div. 1959).
*384 The failure of more people to attend the public meetings when questions of this kind are dealt with is the experience common to all persons who are acquainted with the reactions of the public to such questions. The many momentous public problems confronting municipal bodies ofttimes find little or no response from the public when these questions are considered in public meetings.
The testimony which was adduced to show that the findings were inconsistent with the facts resulted in varying interpretations given to statements by the persons interviewed and those conducting the interviews, and does not affect the validity of the report.
In considering the issues before the court all reasonable presumptions must be indulged in support of the action of the charter commission to which the law intrusts the proceedings resulting in its determination. It is the general rule that in absence of evidence to the contrary, commissions, such as this one, will be presumed to have properly performed their duties and not to have acted illegally, but regularly and in a lawful manner. This rule must be applied when its decisions are challenged in court, and the burden of proving otherwise is upon the plaintiff. Under this general rule, all legal intendments are in favor of the charter commission's action. Its action will be presumed valid, taken on knowledge of material facts, justified by the facts, made upon full hearing, and upon appropriate evidence duly considered and properly applied. The plaintiffs have failed to overcome these presumptions and have failed to bear the burden of proof imposed on them.
In dealing with this statute and with the actions of this commission it must be always kept in mind that
"* * * The Commission can only study the various plans and then report its recommendations to the people. The function of the commissioners is purely that of selection and recommendation, not of legislation or adoption.
The charter commission is vested with no powers of government. It cannot impose its will upon the people. Its findings and recommendations have none of the force of legislation. The adoption of *385 a plan rests entirely in the hands of the voters. The members of the charter commission are their agents, chosen because of their ability to aid in the selection of a desirable plan of municipal government. If the voters are dissatisfied with the recommendation of the charter commission, they can vote it down * * *." Bucino v. Malone, 12 N.J. 330, 340 (1953).
The court finds no reason to invalidate or set aside the report of the Camden Charter Commission and determines that said report meets all the statutory requirements. The application to restrain the City Clerk of the City of Camden from placing the question of the adoption or rejection of the plan on the ballot, and from certifying an election thereon for February 21, 1961, is hereby denied.
The plaintiffs' action is dismissed without costs.