368 P.2d 758

Delano Allen WOODS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Phoenix Flasher Company, Respondents.

No. 7243.

Supreme Court of Arizona.

En Banc.

Feb. 15, 1962.

Shimmel, Hill, Kleindienst & Bishop and Richard A. Black, Phoenix, for petitioner.

Edward E. Davis, Phoenix, Donald J. Morgan, James D. Lester, C. E. Singer,

Jr.; and Lorin G. Shelley, Phoenix, of counsel, for Industrial Commission of Arizona.

JENNINGS, Justice.

Delano Allen Woods, hereinafter called petitioner, received an injury when he caught his right hand in a punch press while operating the same in the course of his employment with the Phoenix Flasher, Inc. As a result petitioner suffered a 50% loss of the right ring and long fingers by amputation and a 10% functional loss of the index finger.

After medical discharge from his industrial injury, petitioner was able to adapt and perform all of the duties previously performed by him. Consequently his employer continued to pay him an average monthly wage equal to that which he had prior to the injury.

Many years ago petitioner fell from a tree which resulted in a traumatic paraplegia in the upper dorsal region necessitating amputation of both legs at his thighs.

The Commission entered its findings and award for unscheduled permanent partial disability and found as a result of his combined injuries petitioner suffered no loss of earning capacity.

Petitioner filed timely protest of the award followed by petition and application for rehearing which the Commission denied.

Petitioner's single assignment of error is that the Industrial Commission erred in classifying petitioner's injuries under A.R.S. § 23–1044, subds. C, D and E,[1] being the so-called "odd-lot" classification, instead of properly classifying the disability under A.R.S. § 23–1044, subd. B,[2] known as the "scheduled" injuries classification.

1. "§ 23–1044, subd. C. In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disability shall be deducted from the total period of compensation.

"D. In determining the amount which represents the reduced monthly earning capacity. for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury.

"E. In case there is a previous disability, as the loss of one eye, one hand, one foot or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

2. § 23–1044 B.

\*     \*     \*     \*     \*

"2. For the loss of a first finger, com-

Therefore the sole issue on appeal is whether the Commission erred in applying A.R.S. § 23–1044, subds. C, D and E to the facts of petitioners' claim.

In the instant case the industrial injury consisted solely of the specified scheduled type. However, the Commission based its award on the theory that the previous existing condition of the petitioner (i. e. the thigh amputation) constituted a previous existing disability and consequently this disability coupled with the industrial functional finger loss placed petitioner's case categorically in the unscheduled class. We agree with the Commission's ruling.

■ This Court has on many occasions interpreted A.R.S. § 23–1044, subds. C, D, and E, supra. Hurley v. Industrial Commission, 83 Ariz. 178, 318 P.2d 357; Morris v. Industrial Commission, 81 Ariz. 68, 299 P.2d 652; McKinney v. Industrial Commission, 78 Ariz. 264, 278 P.2d 887; but Cf. Goodyear Aircraft Corp. v. Industrial Commission, 89 Ariz. 114, 358 P.2d 715. All of these cases bear out the Commission's

position, i. e., they require the Commission to take into consideration a previous disability as it exists at the time of a subsequent injury, and if any disability results from the subsequent injury, whether scheduled or unscheduled, or both, the Commission must treat the disabilities as general or unscheduled in nature, and base its award on loss of earning capacity only, as derived from the facts of the case. Ossic v. Verde Central Mines, 46 Ariz. 176, 49 P.2d 396; Ujevich v. Inspiration Consolidated Copper Company, 42 Ariz. 276, 25 P.2d 273.

The facts of the instant case are directly parallel to those of the McKinney case, supra. In that case this Court held that the petitioner's prior loss of a leg even though not caused by industrial accident must be considered as a previous disability. At that time the Commission urged upon this Court the proposition that the prior nonindustrially connected loss of petitioner's right leg did not constitute a disability under the statute as petitioner, before his subsequent industrial accident, had been employed suc-

monly called the index finger, nine months.

"3. For the loss of a second finger, seven months.

"4. For the loss of a third finger, five months.

\*      \*      \*      \*      \*

"6. The loss of a distal or second phalange of the thumb or the distal or third phalange of the first, second, third or fourth finger, shall be considered equal to the loss of one half of the thumb or finger, and compensation shall be one

half of the amount specified for the loss of the entire thumb or finger.

\*      \*      \*      \*      \*

"21. For the partial loss of use of a finger, toe, arm, hand, foot, leg, or partial loss of sight or hearing, fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, or complete loss of sight or hearing, which the partial loss of use thereof bears to the total loss of use of such member or total loss of sight or hearing."

cessfully as a service station attendant. Directing its attention to this issue this Court stated at page 266 of 78 Ariz., at page 888 of 278 P.2d:

"* * * It seems extremely unrealistic to say that a man whose sphere of employment is industrial labor has no loss of earning power by the loss of a leg, especially when subdivision (e) recognizes it as causing some disability. * * *"

From this we must conclude that an industrial workman with two legs amputated must have suffered from a previous disability at the time of accident which would preclude the Commission from considering the applicant as eligible for benefits under the provisions of A.R.S. § 23–1044, subd. B, supra, the scheduled injury section.

The facts support the Commission's determination that there was no loss of petitioner's earning capacity. He earned $211.62 thirty days preceding the injury and was able to earn $220 in thirty days beginning just a little over one month after his injury.

It seems most regrettable that petitioner is thus foreclosed from receiving compensation by reason of his industrial accident. Though his current earning capacity has not been reduced, should petitioner for any reason henceforth lose his current employment, thence find himself competing in the open market for hire, and due to his functional finger loss be unable to obtain a wage comparable to that which he is now receiving, his earning capacity will indeed be reduced. While this issue is not presented in this case it seems a logical offshoot to this set of facts.

In legal contemplation if petitioner should meet face to face with this hypothetical abyss he will not be able to reopen his claim for readjustment of compensation, for in order to do this he must show (1) there has been a change in his physical condition subsequent to the time the prior claim culminated in award, (2) that such change resulted from the injury upon which the prior award was based, and (3) that it affects the earning capacity of the petitioner. A.R.S. § 23–1044, Subsection F. See Jastrzebski v. Wasielewski, 82 Ariz. 92, 308 P.2d 937, 938, 939. Petitioner did not in the instant case raise the constitutionality of A.R.S. § 23–1044, Subsection F. After a thorough examination of the Arizona cases we find that the constitutionality of A.R.S. § 23–1044, Subsection F, has never been raised. See Art. 18, § 8, Const. of Arizona, A.R.S.

Award affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concurring.