494 P.2d 391

Arnold P. GALLARDO, Petitioner,

v.

The INDUSTRIAL COMMISSION
of Arizona, Respondent,

Ralph Parsons Company, Respond-
ent Employer,

The Travelers Insurance Company,
Respondent Carrier.

No. 1 CA–IC 595.

Court of Appeals of Arizona,
Division 1,
Department B.

March 7, 1972.

Rehearing Denied April 6, 1972.

Review Denied June 6, 1972.

Gilbert Gonzalez and Lawrence Ollason, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, Industrial Comm. of Ariz., Phoenix, for respondent.

Spaid, Fish, Briney & Duffield by Michael C. Young, Tucson, for respondent Employer and Carrier.

JACOBSON, Judge.

This appeal by way of writ of certiorari raises the interesting question of whether the *Ronquillo*[1] formula that a scheduled injury[2] plus a scheduled injury equals an unscheduled injury applies in the case of unscheduled injury plus an inguinal hernia injury.

Petitioner suffered an industrial injury to his back in 1952 which was aggravated in 1960. This industrial injury resulted in an award finding that he had a general physical functional disability not exceeding ten percent which in no manner affected his earning capacity.

---

1. Ronquillo v. Industrial Commission, 107 Ariz. 542, 490 P.2d 423 (1971).

2. "Scheduled" injuries refer to those injuries compensated under A.R.S. § 23– 1044, subsec. B, while "unscheduled" injuries refer to those injuries compensable under A.R.S. § 23–1044, subsec. C.

· On October 6, 1969, while employed as a steel painter, petitioner, then sixty years old, slipped and fell, sustaining right and left inguinal hernias. There is no contention that these are "real traumatic hernias" and therefore compensable under A.R.S. § 23–1043, subsec. 1. Both of these hernias were surgically repaired and petitioner was released for work on February 16, 1970.

Insofar as petitioner's back problem is concerned, he complained of continued pain and discomfort prior to the hernia accident, but had not been treated by a doctor for his back since 1962, or seven years prior to his hernia accident. The evidence was also clear that this prior back injury had not interfered with his earning capabilities.

In addition, the doctor who had surgically repaired petitioner's hernias testified that petitioner was suffering no functional disability as a result of these hernias and that he could return to work, although he did advise petitioner to restrict his activities to insure against their reoccurrence.

Evidence was also introduced which would indicate that petitioner's failure to return to work following his hernia accident was based on a reluctance of employers to hire a previously industrially injured employee.

Based upon this evidence, the hearing officer entered a decision awarding petitioner medical expenses from October 9, 1969 through May 6, 1970 and compensation for two months based upon the provisions of A.R.S. § 23–1043, subsec. 2.[3] This award was affirmed by the Commission and petitioner has appealed by way of certiorari.

■ Petitioner's first contention is that he is entitled to temporary partial benefits until such time as his condition has become stationary and that no ruling has been made in this regard. Our reading of the hearing officer's decision entered on September 24, 1970 shows otherwise. One of the findings of the hearing officer was:

". . . that applicant's condition as referable to his hernias became medically stationary on May 6, 1970 and remains stationary; that applicant needs no further treatment related to his hernia condition at this time; that applicant has sustained no permanent disability related to his hernia condition."

Our review of the medical testimony supports this finding.

■ Petitioner's second contention is that because of his prior industrial back injury, his subsequent hernia injury was converted from being compensable under A.R.S. § 23–1043, subsec. 2 to an unscheduled injury compensable under A.R.S. § 23–1044, subsec. C. His attack along these lines is two-pronged. The first of these is that the decision of the Supreme Court in Ronquillo v. Industrial Commission, *supra*, requires that his second industrial injury be treated as unscheduled. *Ronquillo* dealt with the sequence of scheduled industrial injury, followed by a second industrial injury, which if it had been his first injury would have fallen into the scheduled classification. Under such circumstances the *Ronquillo* court held that it is conclusively presumed that claimant's first scheduled in-

---

3. "2. All other hernias, whenever occurring or discovered and whatsoever the cause, except as under paragraph 1 of this section, are considered diseases causing incapacitating conditions or permanent partial disability, but the permanent partial disability and the causes thereof are considered to be as shown by medical facts to have either existed from birth, to have been years in formation, or both, and are not compensatory, unless it is proved:

   *     *     *     *     *

"If the facts in subdivisions (a), (b), (c) and (d) of this paragraph are proven, the hernias are considered to be aggravations of previous ailments or diseases, and will be compensated as such for time lost only to a limited extent, depending upon the nature of the proof submitted and the result of the local medical examination, but for not to exceed two months."

dustrial injury resulted in a loss of earning capacity and therefore his second industrial injury must be treated as unscheduled under the provisions of A.R.S. § 23–1044, subsec. E.[4]

Unfortunately, the Supreme Court in *Ronquillo* did not set forth its reasoning as to why the conclusive presumption of loss of earning capacity arising from a prior scheduled industrial injury exists. From our analysis of the statutory provisions involved, we can find only one logical explanation which requires the existence of a conclusive presumption. The language of A.R.S. § 23–1044, subsec. B, which deals with scheduled injuries, states, *"Disability shall be deemed permanent* partial disability if caused by any of the following specified injuries . . .*"* (emphasis added). If this statute is read with the statutory construction placed on the word "disability" by our courts—loss of earning capacity State Compensation Fund v. Cramer, 13 Ariz.App. 103, 474 P.2d 462 (1970); Lee Moor Contracting Co. v. Industrial Commission, 61 Ariz. 52, 143 P.2d 888 (1943) —it would read as follows: "Loss of earning capacity *shall be deemed permanent. . . ."* Thus, this statute by its own terms can be interpreted to require the conclusive presumption of loss of earning capacity found by the *Ronquillo* court.

If our analysis of the reasoning underlying *Ronquillo* is correct, then a conclusive presumption, or for that matter any type of presumption concerning earning capacity, can, by the language of the statute, follow only scheduled injuries. This is for the reason that the statutory language of A.R.S. § 23–1044, subsec. C (giving rise to unscheduled injuries), provides:

"*. . .* [W]here the injury causes permanent partial disability for work, the employee shall receive *during* such dis-

ability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, *but the payment shall not continue after the disability ends . . . ."*

(emphasis added.)

Nowhere does A.R.S. § 23–1044, subsec. C contain comparable language to A.R.S. § 23–1044, subsec. B, that the unscheduled injury "shall be deemed permanent." On the contrary, subsection C is explicit that unscheduled injuries may be transitory in nature depending upon the claimant's continued loss of earning capacity. Therefore, if the prior unscheduled injury does not result in a loss of earning capacity, and no presumption arises from the statute, then no "disability" is present to make operative the provisions of A.R.S. § 23–1044, subsec. E (combining of disabilities to result in an injury compensable upon loss of earning capacity).

In this case, there being no contention that at the time of the second injury petitioner was suffering from a loss of earning capacity as a result of his prior industrially related unscheduled back injury, and the evidence showing this as a fact, this second injury must be compensated under the statute applicable to hernias, A.R.S. § 23–1043, subsec. 2.

We have, in our analysis of petitioner's situation, declined to consider the "sui generis"[5] nature of hernia injuries compensable under A.R.S. § 23–1043, subsec. 2. We also decline to consider, which in this case would be pure dicta, if the prior unscheduled disability had resulted in a loss of earning capacity at the time of the hernia accident, whether a hernia injury

---

4.  See, Duron v. Industrial Commission, 16 Ariz.App. 71, 491 P.2d 21 (1971) for a discussion of the effect of *Ronquillo* and A.R.S. § 23–1044, subsec. E.

5.  As was stated in Williams v. Industrial Commission, 68 Ariz. 147, 202 P.2d 898 (1949) : " . . . [U]nder our Work-

men's Compensation Law the subject of hernia and compensation therefor is treated sui generis, the provisions of *the remaining sections of the Compensation Law not being directly applicable."* 68 Ariz. at 150, 202 P.2d at 900 (emphasis added.)

**494**

could increase the prior loss of earning capacity.

Petitioner's second tine to his two-pronged attack is that the reasoning of Corrier v. Industrial Commission, 3 Ariz. App. 39, 411 P.2d 462 (1966) applies in this case. In *Corrier* the Court of Appeals held that a hernia which is incapable of being surgically corrected (because of a preexisting cardiac condition), coupled with a scheduled injury, results in an unscheduled award. The *Corrier* decision is obviously not applicable to the facts in this case as petitioner's hernias have been surgically corrected, and from the medical testimony he suffers no functional disability as a result thereof.

For the foregoing reasons, the award of the Industrial Commission is affirmed.

HAIRE, P. J., and EUBANK, J., concur.